PAT H. FOLEY & COMPANY, Appellant,

v.

Zelda WYATT, Appellee.

No. 230.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

June 11, 1969.

Rehearing Denied July 2, 1969.

Alice Giessel, Talbert, Giessel, Barnett & Stone, Houston, for appellant.

Kenneth L. Box, Landis, Gregory & Mullins, Houston, for appellee.

SAM D. JOHNSON, Justice.

This is a suit against a funeral home, Pat H. Foley and Company, for damages sustained by the plaintiff, Zelda Wyatt, incident to the funeral of her son. The plaintiff claimed damages based on the failure of the defendant to properly perform its contract for embalming, burial and funeral services, and the negligence of the defendant in preparing, embalming, preserving and protecting the dead body for burial. The plaintiff made no claim for actual physical harm to herself but did claim damages for mental anguish.

The jury made certain findings in behalf of the plaintiff and also found her damages to be in the amount of $15,000. The court overruled defendant's motion for judgment non obstante veredicto and judgment was entered for plaintiff upon the jury's verdict. Pursuant to the trial court's order overruling defendant's motion for new trial conditioned upon remittitur, plaintiff remitted $10,000 of the judgment, thereby reducing the amount to $5,000. The defendant funeral home perfects its appeal to this Court.

It appears that the plaintiff's 23-year old son died on May 23, 1962. The defendant funeral home was contacted by a member of the family to take the body, which had been autopsied, and to be in charge of those matters which attend funeral preparations and burial. The body was taken by the funeral home and embalmed by its employee on May 24th. The body remained in the funeral home until May 26th, the day of the funeral. During this period the family was with the body from time to time. On the date of the funeral the body was transported by the defendant to Oakhurst, a rural community near Huntsville, where there was to be a church service prior to interment. Just before the casket was taken inside the church the casket was opened by an employee of the defendant in the presence of the plaintiff's brother, whereupon the offensive odor emanating from the body necessitated the immediate closing of the casket. It is not altogether clear whether or not the plaintiff was informed of this odorous condition. It appears that whatever information she received, however, did not come to her from an employee or representative of the defendant funeral home. The best that can be determined is that either the minister or a relative told her that something was wrong and that she could not see the body.

Near the conclusion of the service the plaintiff indicated her insistence that the casket be opened. All others were then excused except for members of the immediate family. Upon the opening of the casket there emanated from the body of her son a grossly offensive odor. It was this occurrence which gave rise to the damages claimed by the plaintiff. The plaintiff immediately became ill, fainted and received medication. It may fairly be said that the impact of the occurrence occasioned a significant effect upon the sensibilities of the plaintiff.

Affirmatively, the jury found that the plaintiff's son's body was emitting offensive odors from embalming, that the defendant knew, or should have known, of such offensive odors, that the defendant failed to advise the plaintiff against opening the casket at the funeral service, and

that this failure was negligence proximately causing plaintiff's mental anguish. These findings were the basis of the judgment for the plaintiff. The jury also found, however, that the defendant was not negligent in the manner of embalming. The jury found that though the plaintiff knew of the odorous condition of the body before the funeral services her insistence upon an open casket at the church was not negligence.

■ Appellant funeral home's first three points allege error in the trial court's granting judgment solely for mental anguish. Appellant points to the general rule that if no physical harm to the person of the plaintiff is disclosed, no right of recovery exists by virtue of mental suffering alone, and cites 17 Tex.Jur.2d 194, Damages, Sec. 129; Renfro Drug Co. v. Lawson, 138 Tex. 434, 160 S.W.2d 246, 146 A.L.R. 732; Harned v. E–Z Finance Co., 151 Tex. 641, 254 S.W.2d 81, (Tex.Sup.) See comment to 2 Restatement of Torts 2d, Sec. 436A. While the appellant is correct insofar as the general rule is concerned, such position ignores the exception to such rule applicable to the instant case and followed in this jurisdiction.

The parties in the instant case were not strangers to each other; their relationship was contractual. While the plaintiff's pleadings additionally allege negligence, an initial basic allegation is that the defendant failed to perform according to its contractual responsibility. This is not a claim for mental anguish founded solely in negligence.

In Lamm v. Shingleton, 231 N.C. 10, 55 S.E.2d 810 (1949), the plaintiff brought an action against a funeral home for failure to properly conduct the funeral of her husband in that the vault, during a rainy spell of weather, rose to the surface revealing that it had not been properly locked and that water and mud had entered it. The Court there posed a "primary question" to itself, "Is mental anguish an element of damages to be considered by the jury in an action for the breach of the contract alleged and, if so, must plaintiff show that the breach amounted to a willful tort?"

Citing extensive authority the Court responded in part, "Where the contract is personal in nature and the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with the sensibilities of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering, and it should be known to the parties from the nature of the contract that such suffering will result from its breach, compensatory damages therefor may be recovered."

Texas authority supports the rationale of the Lamm case, supra. In Lancaster v. Mebane, Tex.Civ.App., 247 S.W. 926, writ ref., the defendant failed to timely deliver a dead body according to the agreement of the parties. In Missouri K & T Ry. Co. of Texas v. Hawkins, 50 Tex.Civ.App. 128, 109 S.W. 221, writ ref., there was negligent handling of a dead body received for shipment. In Classen v. Benfer, Tex.Civ. App., 144 S.W.2d 633, writ dismd., a dead body was removed from a cemetery and could not now be located. In J. E. Dunn & Co. v. Smith, Tex.Civ.App., 74 S.W. 576, writ ref., the defendant failed to supply a burial robe and coffin of proper dimensions. These cases reveal no personal injury to the plaintiff yet recovery was allowed in each for the mental anguish that ensued. Analogous also are the telegraph company cases in which recovery for mental anguish alone is not prohibited. See Western Union Telegraph Co. v. Hinson, Tex.Civ.App., 222 S.W.2d 636, writ ref., n. r. e., and the numerous cases therein cited. Such cases are founded upon a contractual responsibility yet generally allege negligence proximately occasioning the particular mental anguish.

The reasons for not allowing damages for mental anguish alone have been enumerated by our Supreme Court in Harned v. E–Z Finance Co., supra, "(M)ental anguish, standing alone, is too subtle and speculative to be measured by any known

legal standard; mental anguish and its consequences are so intangible and peculiar and vary so much with the individual that they cannot reasonably be anticipated, hence they fall without the boundaries of any reasonably proximate causal connection with the act of the defendant; a "wide door" might thereby be opened not only to fictitious claims but to litigation over trivialities and mere bad manners as well; and, finally, since mental anguish can exist only in the mind of the injured party, not only its extent but its very existence can be established only by the word of the injured party, in the absence of some objective injury."

■ In the instant case, however, the mental anguish is not founded solely in the tortious act of the defendant, it is at least in part based upon their contractual relationship. Secondly, the enumerated considerations fail for the reasons best set forth in Lamm v. Shingleton, supra, "The tenderest feelings of the human heart center around the remains of the dead. When the defendants contracted with plaintiff to inter the body of her deceased husband in a workmanlike manner they did so with the knowledge that she was the widow and would naturally and probably suffer mental anguish if they failed to fulfil their contractual obligation in the manner here charged. The contract was predominently personal in nature and no substantial pecuniary loss would follow its breach. Her mental concern, her sensibilities, and her solicitude were the prime considerations for the contract, and the contract itself was such as to put the defendants on notice that a failure on their part to inter the body properly would probably produce mental suffering on her part. It cannot be said, therefore, that such damages were not within the contemplation of the parties at the time the contract was made." Defendant's first three points of error are overruled.

Defendant next presents a single argument in support of some sixteen points of error. In some instances these points of error relate to particular special issue findings or series of special issue findings. As to some the defendant alleges no evidence. As to others the defendant contends that they are so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. In others, the defendant contends certain special issue findings to be in conflict. In another the defendant interposes, for the first time, incidentally, the defense of volenti non fit injuria. In still another, the defendant contends that the plaintiff's own action was a proximate cause of the damages alleged. Each of these points of error are overruled.

■ Appellant's final three points of error relate to the damages reflected in the judgment now before the Court in the sum of $5,000. It is to be recalled that the jury found damages in the sum of $15,000. The trial court's order overruling the defendant's motion for new trial was conditioned upon remittitur, however, and the plaintiff remitted $10,000. Nevertheless, the defendant contends that the damages are still so excessive as to indicate they are the result of some improper motive on the part of the jury, and prays that they be reduced to a figure not in excess of $500, citing Dallas Ry. & Terminal Co. v. Farnsworth, 148 Tex. 584, 227 S.W.2d 1017; Texas Rules of Civil Procedure, Rule 440. Applying the test of the Farnsworth case, supra, we cannot say that the court's judgment is "excessive" so as to require a reversal for that reason only. These points of error are overruled.

■ By cross point plaintiff alleges that the trial court's order of a remittitur of $10,000 as a condition to not granting a new trial constituted a manifest abuse of discretion, citing Flanigan v. Carswell, Tex.Civ.App., 329 S.W.2d 902, writ ref., n. r. e. We do not find the trial court's action to be "manifestly unjust," as required in Flanigan v. Carswell, supra, and the cross point of the plaintiff is overruled.

Finding no error in the judgment of the trial court it is affirmed.